554 So.2d 522 (1989)
Terri J. GANSON, Appellant,
v.
STATE of Florida, DEPARTMENT OF ADMINISTRATION, OFFICE OF STATE EMPLOYEES' INSURANCE, Appellee.
No. 88-1568.
District Court of Appeal of Florida, First District.
December 22, 1989.
Rehearing Denied January 26, 1990.
*523 Kenneth D. Kranz, of Eric B. Tilton, P.A., Tallahassee, for appellant.
Augustus D. Aikens, Jr., Gen. Counsel, Dept. of Admin., Tallahassee, for appellee.

OPINION AND ORDER ON ATTORNEY FEE
BARFIELD, Judge.
By direction of this court the matter of attorney fees payable to appellant was submitted to Michael M. Parrish, Hearing Officer, for a recommendation on the amount of fee to be awarded. His Report and Recommendation follows.

*524 REPORT AND RECOMMENDATION
By opinion filed July 7, 1989, reported at 554 So.2d 516, the District Court of Appeal, First District, reversed and remanded a final order of the Department of Administration. The opinion included the following disposition of Ganson's motion for costs and attorney fees:
Appellant's motion for attorney fees under section 120.57(1)(b)10, Florida Statutes (1987), based upon her assertion that the agency action which precipitated the appeal was a gross abuse of the agency's discretion, is granted. The parties may, within twenty days of the date this decision becomes final, file with this court a stipulation regarding the amount of reasonable attorney fees to be awarded. In the event the amount of the attorney fees cannot be agreed upon by the parties within the time allotted, the Department shall promptly refer the matter to Michael Parrish, the Division of Administrative Hearings hearing officer, for an immediate evidentiary hearing to determine the amount of reasonable attorney fees. The hearing officer's recommendations thereon shall be filed with this court within sixty days after this opinion shall have become final, at which time this court will enter an appropriate order awarding attorney's fees. Purvis v. Department of Professional Regulation, 461 So.2d 134 (Fla. 1st DCA 1984); Johnston v. Department of Professional Regulation, 456 So.2d 939 (Fla. 1st DCA 1984).
The parties were unable to reach a stipulation regarding the amount of reasonable attorney fees to be awarded. On August 28, 1989, the Department of Administration referred the matter to Michael Parrish, a hearing officer of the Division of Administrative Hearings, to conduct an evidentiary hearing to determine the amount of reasonable attorney fees. In order to accommodate scheduling difficulties of counsel, at the request of the parties the court extended the sixty-day period for the filing of the hearing officer's recommendations until October 13, 1989. (See Motion For Extension of Time filed September 7, 1989, and order granting same issued September 14, 1989.)
An evidentiary hearing was originally scheduled for September 15, 1989. At the request of counsel for the Department of Administration, the evidentiary hearing was continued until September 22, 1989. At the hearing on September 22, 1989, Ganson presented the testimony of Kenneth D. Kranz, Esquire, the attorney who performed all of the services for which fees are claimed. Ganson also offered numerous exhibits including the affidavits of two local attorneys (Vernon T. Grizzard, Esquire, and Fishel Philip Blank, Esquire), both of which included expert opinions regarding the reasonableness of the attorney fees sought by Ganson. The Department also called Mr. Kranz as a witness and offered four exhibits. [Rulings on all exhibits offered by all parties are contained in the appendix to this report and recommendation.] The Department did not call any expert witnesses to oppose the opinions expressed by Messrs. Kranz, Grizzard, and Blank.
At the conclusion of the hearing, the parties were allowed until September 29, 1989, within which to file memorandums of law, which have been carefully considered during the preparation of this report and recommendation.
The statutory provision pursuant to which the court has granted an award of attorney fees, Section 120.57(1)(b)(10), Florida Statutes (1987), reads as follows, in pertinent part:
When there is an appeal, the court in its discretion may award reasonable attorney's fees and costs to the prevailing party if the court finds that the appeal was frivolous, meritless, or an abuse of the appellate process or that the agency action which precipitated the appeal was a gross abuse of the agency's discretion.

Attorney Fees
Ganson's Proposal For Amount Of Attorney's Fees And Costs Of Litigation suggests that there may be some disagreement between the parties as to whether the court's award of attorney fees encompasses *525 all phases of this litigation, or is only an award of attorney fees for legal services on appeal. It would appear from the court's specific mention of Purvis v. Department of Professional Regulation, 461 So.2d 134 (Fla. 1st DCA 1984), and Johnston v. Department of Professional Regulation, 456 So.2d 939 (Fla. 1st DCA 1984), that the court envisioned an award of attorney fees "at the hearing level," as well as on appeal. And it also appears to be well settled that attorney fees may also be recoverable for the time spent litigating entitlement to attorney fees. See Bill Rivers Trailers, Inc. v. Miller, 489 So.2d 1139 (Fla. 1st DCA 1986); B & L Motors, Inc. v. Big Inotti, 427 So.2d 1070 (Fla. 2d DCA 1983). See also Albert Heisler v. Department of Professional Regulation, Construction Industry Licensing Board, 11 FALR 3309 (DOAH Final Order issued May 19, 1989). For purposes of this report and recommendation, I have assumed that the court's award of attorney fees encompassed all three phases of activity in this litigation; the "administrative phase" (from the commencement of the administrative claim until the Department's final order), the "appeal phase" (from the Department's final order until the appellate court opinion), and the "attorney fee phase" (from the appellate court opinion to the present). Accordingly, I have included in this report and recommendation discussion and recommendations as to the appropriate attorney fee award for all three phases of the litigation. Where it appears helpful to do so, issues regarding the three phases are discussed separately.
The methodology to be followed in determining the amount of reasonable attorney fees to be awarded to a prevailing party is set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). There, the Florida Supreme Court decided to "adopt the federal lodestar approach for computing reasonable attorney fees" and, at pages 1150-51, set forth the following methodology:
The first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation. Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee... . To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed. Counsel is expected, of course, to claim only those hours that he could properly bill to his client. Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary. The "novelty and difficulty of the question involved" should normally be reflected by the number of hours reasonably expended on the litigation.
The second half of the equation, which encompasses many aspects of the representation, requires the court to determine a reasonable hourly rate, for the services of the prevailing party's attorney. In establishing this hourly rate, the court should assume the fee will be paid irrespective of the result, and take into account all of the Disciplinary Rule 2-106 factors except the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "[w]hether the fee is fixed or contingent." The party who seeks the fees carries the burden of establishing the prevailing "market rate," i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services.
The number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar, which is an objective basis for the award of attorney fees. Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a "contingency risk" factor and the "results obtained."

1. The number of hours reasonably expended on the litigation.

Ganson's attorney has submitted contemporaneously prepared, detailed time *526 records evincing his labors at all three phases of this litigation. These records reflect that Ganson's counsel recorded 66.2 hours at the administrative phase, 94.2 hours at the appeal phase, and 32.6 hours at the attorney fee phase, for a grand total of 193 hours. To support the application for fees, Ganson introduced the affidavits of two members of the Florida Bar, both of whom practice administrative law in the Tallahassee area, and both of whom opined that the total number of hours claimed was reasonable and that the number of hours claimed for each of the three phases of the litigation was also reasonable. Although the Department argues that many of the hours claimed by Ganson's attorney are excessive, the Department did not offer any expert witness testimony to support its arguments.
Part of the Department's argument in this regard is that the hours claimed by Ganson's attorney should be reduced because the attorney prepares his own legal documents, including pleadings, notices, motions, and briefs, by typing on a computer. Mr. Kranz explained in his testimony that such preparation is no different and no more time-consuming than preparation of documents by such means as oral dictation or handwriting, and the Department has not offered any evidence that Mr. Kranz's document preparation methods are more time-consuming than the methods of other attorneys.
Also, without benefit of expert opinion or other evidence, the Department argues that the amount of time spent by Ganson's attorney on writing the brief in the appellate court should be reduced from the claimed 51 hours to an arbitrary figure of 26 hours. There is simply no basis in the record for such a reduction. Nor is there any record basis for the Department's contention that the hours spent by Ganson's attorney in preparation for oral argument should be arbitrarily reduced from the claimed 13 to a mere 4. The Department has raised challenges to several other details of the hours claimed by Ganson's attorney, but all of the challenges fail for want of expert opinion or other evidence to support them.
Based on the evidence presented, all of the hours claimed by Ganson's attorney are reasonable. Accordingly, the first step in the lodestar calculation consists of a total of 193 hours broken down as follows: 66.2 hours at the administrative phases, 94.2 hours at the appeal phase, and 32.6 hours at the attorney fee phase.

2. The reasonable hourly rate for the services of Ganson's attorney.

The parties disagree on what constitutes a reasonable hourly rate for Ganson's attorney. Ganson contends that the rate should be $125 per hour, basing the contention largely on the opinions in the Blank and Grizzard affidavits to the effect that $125 is the "market rate" in the Tallahassee legal community for services of the nature provided in this case. The Department contends, based primarily on its notions about the experience level of Mr. Kranz and on what Mr. Kranz has charged other clients for legal work, that a reasonable hourly rate would be $75 for legal work at the administrative phase and $100 per hour for legal work at the appeal phase and thereafter.
Ganson's contentions are supported by evidence; the Department's are not. Further, Ganson's contentions are consistent with the second step methodology of Rowe, supra, while the Department's are not. Rowe places on the party seeking attorney fees the burden of establishing "the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services." The evidence shows that rate to be $125 per hour.

3. The calculation of the lodestar amount.

The calculation of the lodestar amount under the Rowe methodology is normally a simple arithmetic task; the multiplication of the reasonable number of hours times the reasonable hourly rate. Here, the calculation is as follows: For the administrative phase, 66.2 hours X $125.00 = $8,275.00; for the appeal phase, 94.2 hours X $125.00 = $11,775.00; and for the attorney fee phase, 32.6 hours X $125.00 *527 = $4,075.00. Adding the three components together produces a lodestar of $24,125.00.
But the Department argues, on the basis of cases such as Miami Children's Hospital v. Tamayo, 529 So.2d 667 (Fla. 1988), that the fee to be awarded in this case must be limited to the maximum fee that Ganson was obligated to pay to her attorney; an amount which the Department contends is only $500.00. Disposition of this issue requires a closer look at the nature of Ganson's fee arrangement and at a couple of other more analogous cases.
The fee arrangement between Ganson and her attorney is described as follows in one of the Kranz affidavits (Petitioner's Exhibit 2, at pp. 8 and 9):
Our agreement was that: 1) no fee would be owed if we were not successful in her claim; and 2) we would attempt to secure an award of fees against the Department, and in the event that we were successful in that claim, attorney's fees would be whatever were awarded.
* * * * * *
Upon being advised at the outset that an eventual award of fees appeared very unlikely, the client initially insisted that she wanted to pay me something if we ultimately won on the merits, but did not prevail on the issue of fees. I perceived that it was very important to her not to consider herself to be taking advantage of me. I agreed and said that we would decide on a fee later if that situation arose. We never discussed an amount certain, but it was my intention that, if we ended up in this situation, I would charge her, if anything, a token amount only large enough to make her comfortable. Realistically, no significant fee (if any) would have been paid by the client; any fees bearing any rational relationship to the work required in this case could only have come from an award against the Department.
In his testimony at the hearing, Mr. Kranz testified that if Ganson had won on the merits, but had not been awarded attorney fees against the Department, and if Ganson had insisted on paying a fee for legal services, he would probably have charged her about $500.00. But Mr. Kranz clarified that under those circumstances, the fee would have been more in the nature of what Ganson wanted to pay, rather than anything she would have been required to pay. In brief summary; although under certain speculative circumstances which might have, but never did, come about, Ganson might have wanted to pay a nominal fee to her attorney, her attorney had no intention of collecting a fee from any source other than an award of attorney fees against the Department. Specifically, Ganson's attorney did not have an agreement to share in any percentage of any recovery he might obtain for Ganson.
Ganson's fee agreement with her attorney is unlike the agreement in Miami Children's Hospital, supra, and is quite similar to the fee agreements addressed in Quanstrom v. Standard Guaranty Insurance Company, 519 So.2d 1135 (Fla. 5th DCA 1988), and State Farm Fire and Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988). The fee agreement in Quanstrom, supra, "was to the effect that if the attorney ultimately prevailed ..., the attorney would be entitled to a fee which would be the amount the court allowed as an attorney's fee under Section 627.428, Florida Statutes, rather than a percentage of the recovery." And in Palma, supra, the contingency fee agreement provided that "the amount of the fee agreed to under the contract was a fee to be awarded by the court." In both Quanstrom and Palma, the courts held that the usual Rowe factors should be used to calculate reasonable attorney fees, and in neither case was the fact that no fee was due from the client found to be a basis for limiting the fee. In view of the nature of the fee agreement in this case, and on the basis of Quanstrom and Palma, the usual Rowe factors should be applied here.

4. Effect of "results obtained" on the lodestar amount. In the Rowe decision the court observed, at page 1151:
The "results obtained" may provide an independent basis for reducing the fee when the party prevails on a claim or claims for relief, but is unsuccessful on *528 other unrelated claims. When a party prevails on only a portion of the claims made in the litigation, the trial judge must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims.
In this case, Ganson was successful on her entire claim against the Department. Therefore, the "results obtained" component of the Rowe methodology does not provide a basis for reducing the fee.

5. Application of the "contingency risk" factor to the lodestar amount.

Ganson argues that a "contingency risk" factor of 2.5 should be applied to the lodestar amount. The Department argues, for a number of different reasons set out below, that no contingency risk factor should be applied in this case. At page 1151 of the Rowe decision, the court tells us the following about contingency risk factors:
Based on our review of the decisions of other jurisdictions and commentaries on the subject, we conclude that in contingent fee cases, the lodestar figure calculated by the court is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 3. When the trial court determines that success was more likely than not at the outset, the multiplier should be 1.5; when the likelihood of success was approximately even at the outset, the multiplier should be 2; and, when success was unlikely at the time the case was initiated, the multiplier should be in the range of 2.5 and 3. (emphasis added)
The use of the phrase "entitled to enhancement" supports a conclusion that the application of a multiplier is mandatory in contingent fee cases, and Florida appellate courts in two districts have so held. See State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988); Quanstrom v. Standard Guaranty Insurance Company, 519 So.2d 1135 (Fla. 5th DCA 1988). But several decisions in the Third District Court of Appeal have concluded that the contingency risk multiplier is not mandatory. See Bankers Insurance Company v. Valmore Gonzalez, 545 So.2d 907 (Fla. 3d DCA 1989); National Foundation Life Insurance Company v. Wellington, 526 So.2d 766 (Fla. 3d DCA 1988); Travelers Indemnity Company v. Sotolongo, 513 So.2d 1384 (Fla. 3d DCA (1987). Although the matter is not entirely free from doubt, unless and until the matter is further clarified by the Florida Supreme Court, it would appear that the better reasoned view, and the most widely accepted view, is that the contingency risk multiplier should be treated as mandatory in cases where the party seeking fees has entered into a contingent fee agreement.
The Department argues that, even if mandatory, a contingency risk multiplier is inappropriate here because the fee agreement between Ganson and her attorney was never reduced to writing. In this regard, the Department relies on FIGA v. R.V.M.P. Corp., 681 F. Supp. 806 (S.D.Fla. 1988), in which a federal court applying Florida law held:
Because this contingency fee arrangement was never reduced to a writing, it is an unconscionable contract. The Rules Regulating the Florida Bar, in particular Rule 4-1.5(D)(1), (2) (1987), provide that every lawyer who accepts a contingency fee arrangement must reduce the arrangement to a writing signed by the client and a lawyer for the law firm representing the client. This obviously is not the case here. Because the proposed arrangement violates this rule of professional responsibility, the contingency fee agreement here is unconscionable and, therefore, void. See Citizens Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714 (1931). Because the contingency fee arrangement here is unconscionable, the court will not apply a contingency risk factor. See Aperm of Fla., Inc. v. Trans-Coastal Management Co., 505 So.2d 459 (Fla. 4th DCA 1987).
Because of the views quoted above, the court in FIGA declined to apply a contingency risk factor, but did, on a quantum *529 merit theory, award a substantial attorney fee. For several reasons, FIGA does not appear to be controlling here. First, the conclusion in FIGA is not based on Florida case law, nor does there appear to be any Florida appellate court decision which has followed FIGA. Second, the facts in FIGA are different from the facts in this case. FIGA involved a contingency fee agreement in which the attorney was to receive one-third of the amount recovered and, if no amount was recovered, the client would pay the costs, but not the fees, of the litigation. As discussed above, the contingency fee agreement in this case does not contemplate the attorney taking a share of the client's recovery or otherwise receiving a fee from the client. Rather, as in Quanstrom and Palma, supra, the only source from which the attorney seeks a fee is the opposing party. Because of these differences, FIGA is inapplicable to the instant matter.
The Department also argues that on the basis of Pennsylvania v. Delaware Valley Citizens, Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the use of the contingent fee multiplier should be limited or omitted. In response to an identical argument, the court in Aetna Life Insurance Company v. Casalotti, 544 So.2d 242 (Fla. 3d DCA 1989), held:
We are unable to entertain that suggestion, for the Florida Supreme Court in Rowe expressly authorized multipliers and prescribed the permissible range.
The same result should obtain here. See also, State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988), and Quanstrom v. Standard Guaranty Insurance Company, 519 So.2d 1135 (Fla. 5th DCA 1988). (Contingent fee multipliers are mandatory.)
The Department argues that no multiplier should be used because it would result in an attorney fee many times larger than Ganson's recovery and would be a fee with no reasonable relationship to the size of the recovery. In answer to a similar argument, the court in Quanstrom v. Standard Guaranty Insurance Company, 519 So.2d 1135 (Fla. 5th DCA 1988), held:
As to the argument that the contingency risk multiplier may, in the trial court's opinion, result in an unreasonably large fee in a given case (such as when, as here, it is compared only to the amount in controversy), the answer is that the factors other than the contingency risk factor, such as the hours expended and the routinely charged fee rate, are equally implicated. If any formula considers only relevant factors, and all of them, and correctly weighs those factors, the result necessarily will be correct. If the result is unsatisfactory to those having the responsibility and authority in the matter, then they should change the formula by reassessing the factors to be considered and the weight to be given each. We who are bound to follow the authority of others should not omit factors or juggle the weight given a factor, beyond the perimeters given the exercise of discretion, in order to reach a preferred result.
And it should also be noted that in State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988), an attorney fee in the amount of $253,500.00, calculated pursuant to the Rowe factors, was approved on appeal even though the amount recovered by the plaintiff was only $600.00. (The Palma court noted that the litigation in that case had become protracted due to "stalwart defense" and "militant resistance;" characteristics which are to some extent shared by the litigation in this case.) On the basis of the foregoing, the mere size of the fee, if properly calculated pursuant to the Rowe methodology, is not a basis for reduction of the fee.
For all of the reasons set forth above, it is concluded that a contingency risk multiplier should be applied in this case. What remains to be done is to select the appropriate multiplier. Although Ganson argues otherwise, upon consideration of the evidence, it appears that at the outset the likelihood of success in this case was approximately even. To borrow from Appalachian, Inc. v. Ackmann, 507 So.2d 150 (Fla. 2d DCA 1987), in which a multiplier *530 of 2 was approved, at the outset the outcome of this case "was tentative and incapable of a comforting prediction of success." Under such circumstances, Rowe requires a multiplier of 2. Application of that multiplier yields the following results: For the administrative phase, $8,275.00 X 2 = $16,550.00; for the appeal phase, $11,775.00 X 2 = $23,550.00; and for the attorney fee phase, $4,075.00 X 2 = $8,105.00. The total for all three phases of the litigation is calculated as $16,550.00 + $23,550.00 + $8,150.00 = $48,250.00. On the basis of all of the foregoing, a reasonable attorney fee pursuant to the Rowe methodology totals $48,250.00.

Costs
Ganson's motion before the appellate court was titled "Motion For Attorney's Fees," but the opening sentence of the motion requests an award of "attorney's fees and costs." (emphasis added) The motion also concludes with a request for an award of "reasonable attorney's fees and costs." (emphasis supplied) The court's opinion in this case grants Ganson's "motion for attorney fees," but never specifically awards costs. Similarly, the court's opinion does not specifically direct the hearing officer to make any recommendation regarding costs. Nevertheless, the court's specific mention of Purvis v. Department of Professional Regulation, 461 So.2d 134 (Fla. 1st DCA 1984), and Johnston v. Department of Professional Regulation, 456 So.2d 939 (Fla. 1st DCA 1984), leaves open the possibility that it was the court's intention to award costs as well as fees to Ganson. Because of that possibility, I include the following discussion of Ganson's costs.
The costs which Ganson seeks to recover are itemized in the three Kranz affidavits designated as Petitioner's Exhibits 2, 3, and 3A. Broken out into the three phases of this litigation, the costs claimed are summarized as follows:

 Administrative Phase
 Expert witness fee (Dr. Whitley) 100.00
 Expert Witness fee (Dr. Munasifi) 125.00
 Deposition transcript (Dr. Munasifi) 151.94
 Copying charge for medical records 25.00
 Miscellaneous copying charges 89.00
 Miscellaneous postage charges 3.41
 Sales tax on certain expenses 13.16
 ______
 Total claimed for this phase 507.51
 Appeal Phase
 District Court of Appeal filing fee 100.00
 Copying charges  Initial Brief 57.46
 Copy/Binding Charge  Reply Brief 19.44
 Miscellaneous copying charges 39.15
 Miscellaneous postage charges 5.85
 ______
 Total claimed for this phase 221.90
 Attorney Fee Phase
 Photocopying charge  Proposal For
 Fees & Exhibits  Tallahassee Copy
 & Printing 84.80
 ______
 Total claimed for this phase 84.80

The necessity or reasonableness of the costs are not addressed in the affidavits of Blank and Grizzard. The Kranz affidavits itemize the costs, but contain no opinion concerning the reasonableness of the expert witness fees claimed nor any opinion that the other costs claimed were reasonably and necessarily incurred in the prosecution of Ganson's case. The evidence does show that the client has voluntarily paid all but the last few dollars of the costs claimed, which is some evidence of the reasonableness of the costs. Further, facial examination of the costs claimed reveals nothing out of the ordinary. With regard to the expert witness fees paid to Dr. Whitley and Dr. Munasifi, the necessity of such testimony can hardly be doubted in a case in which the central issue concerned the nature of Ganson's medical condition before and after her employment with the state. Finally, the Department of Administration has not argued that any of the costs claimed are unnecessary or unreasonable.
The Department's failure to object notwithstanding, the copying charges (with the exception of the charges for copies of medical records) and the postage charges are not the types of costs that are normally assessed against an opposing party. See Statewide Uniform Guideline For Taxation Of Costs In Civil Actions. Accordingly, the miscellaneous copying charges ($89.00) and miscellaneous postage charges ($3.14) should be deducted from the costs for the Administrative Phase; the initial brief *531 ($57.46), the reply brief ($19.44), and miscellaneous ($39.15) copying charges and the miscellaneous postage charges ($5.85) should be deducted from the costs for the Appeal Phase; and the photocopying charge ($84.80) should be deducted from the costs for the Attorney Fee Phase. With these reductions, the costs Ganson should recover, if it is the intention of the court to award costs, are as follows:

 Administrative Phase $401.94
 Appeal Phase 100.00
 Attorney Fee Phase 0.00
 _______
 Total allowable costs $501.94

RECOMMENDATION
Based on the evidence presented at the hearing on September 22, 1989, the hearing officer recommends that the attorney fees awarded to Ganson be in the following amounts:

 Attorney fees for the Administrative
 Phase: $16,550.00
 Attorney fees for the Appeal
 Phase: 23,550.00
 Attorney fees for the Attorney
 Fee Phase: 8,150.00
 __________
 TOTAL ATTORNEY FEE
 RECOMMENDATION $48,250.00

Based on the evidence presented at the hearing on September 22, 1989, the Hearing Officer recommends that the costs awarded to Ganson be in the following amounts:

 Costs for the Administrative Phase: $401.94
 Costs for the Appeal Phase: 100.00
 Costs for the Attorney Fee Phase: 0.00
 _______
 TOTAL COSTS RECOMMENDATION $501.94

The court approves the Report and Recommendation and adopts it as the order and opinion of the court. The appellant is awarded an attorney fee of $48,250.00 and costs in the amount of $501.94.
SHIVERS, C.J., and ZEHMER, J., concur.