617 So.2d 400 (1993)
HARVARD FARMS, INC., etc., et al., Appellants,
v.
NATIONAL CASUALTY COMPANY, Appellee.
No. 92-533.
District Court of Appeal of Florida, Third District.
April 20, 1993.
Rehearing Denied May 18, 1993.
Richard A. Sherman and Rosemary Wilder, Ligman, Martin & Evans, Fort Lauderdale, for appellants.
Jorden, Schulte & Burchette, Elizabeth M. Bohn and W. Barry Blum, Miami, for appellee.
Before HUBBART, NESBITT and BASKIN, JJ.
NESBITT, Judge.
This is another of the seemingly never-ending appeals from orders awarding attorney's fees under the lodestar approach. Here, we are required to determine whether the trial court erred in refusing to even consider the risk multiplier in fixing a fee based upon an oral contingency fee agreement between the attorney and client. In the present case, the trial court declined to consider such a risk multiplier on the ground that the oral contingency fee agreement is "unconscionable and void under Florida Law and cannot be used as a basis for increasing the lodestar amount of attorney's fees by a Contingency Risk Multiplier." In so ruling, the trial court cited FIGA v. R.V.M.P. Corp., 681 F. Supp. 806 (S.D.Fla. 1988), which relied on rule 4-1.5(D)(1), (2) (1987) of the Rules Regulating the Florida Bar (renumbered rule 4-1.5(f)(1), *401 (2)), to hold the oral contingency fee agreement at issue unconscionable and void, and therefore not able to support a contingency risk multiplier. The rule requires contingency fee agreements to be reduced to a writing signed by the client and a lawyer for the law firm representing the client. For the following reasons we disagree with the trial court's analysis and reverse the order with directions, on remand, to at least consider the risk multiplier.
Our determination is squarely based upon the preamble to chapter 4 of the Rules Regulating the Florida Bar entitled "Rules of Professional Conduct," which provides in pertinent part:
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.
Robert A. Shupack, P.A. v. Marcus, 606 So.2d 466 (Fla. 3d DCA 1992) (on motion for rehearing denied en banc) (Schwartz, C.J. dissenting) (quoting Mark Jay Kaufman, P.A. v. Davis & Meadows, P.A., 600 So.2d 1208, 1211 (Fla. 1st DCA 1992)).[1]
Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990) holds that once a trial court arrives at the lodestar figure in setting a reasonable attorney's fee, the court "`must consider whether or not to apply' the contingency fee multiplier." Id. at 831. Thus, a contingency fee multiplier, although not mandatory, must at least be considered by trial judges in contingency fee cases.
We acknowledge that the Quanstrom decision is unclear as to whether the holding applies to oral contingency fee agreements. However, any doubt was removed by the supreme court's decision in Department of Administration v. Ganson, 566 So.2d 791 (Fla. 1990) (Ganson II). Ganson II reversed a first district decision which clearly dealt with an oral contingency agreement similar to the one in the present case. Ganson v. Department of Admin., 554 So.2d 522 (Fla. 1st DCA 1989) (Ganson I). In Ganson II the supreme court, without disallowing the oral contingency fee agreement in that case, relied on Quanstrom to quash the opinion in Ganson I, which approved a report and recommendation by a hearing officer that a contingency risk multiplier is mandatory when a contingency fee agreement exists between attorney and client.
*402 Adverting to the preamble to chapter 4 above-quoted makes it clear that the rules only create an ethical responsibility in attorneys, the violation of which may lead to possible disciplinary action. The preamble explicitly disavows that violation of a rule should "give rise to any cause of action nor should it create any presumption that a legal duty has been breached." Consequently, the supreme court in deciding Ganson II did not overlook and fail to apply its own rule; instead, out of respect to the purpose of the rule, it recognized that it had no applicability when setting a fee. Accord Mark Jay Kaufman, P.A. v. Davis & Meadows, P.A., 600 So.2d 1208, 1211 (Fla. 1st DCA 1992); Lee v. Florida Dep't of Ins. and Treasurer, 586 So.2d 1185, 1188 (Fla. 1st DCA 1991).
By way of recapitulation, the trial court in the present case determined that a contingency fee agreement existed between appellants and their attorney, but refused to consider the application of a multiplier. On remand, the trial judge must at least consider whether or not to apply a risk multiplier. For this deficiency, the order under review is reversed and remanded for further consideration.
NOTES
[1] We note that the Shupack opinion concerned a fee sharing agreement, unlike the instant oral contingency fee agreement. Moreover, at the time the parties entered into the fee sharing agreement in Shupack, the Florida Bar Code of Professional Responsibility was in effect. This court invalidated the agreement in that case because it failed to meet the requirements of Disciplinary Rule 2-107, Florida Bar Code of Professional Responsibility. The preliminary statement to the Code states in relevant part:

The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action... . The Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct. The severity of judgment against one found guilty of violating a Disciplinary Rule should be determined by the character of the offense and the attendant circumstances.
This is unlike the preamble to the Rules Regulating the Florida Bar which is controlling in the instant case, and which specifically states that a "[v]iolation of a rule should not give rise to a cause of action nor should it create a presumption that a legal duty has been breached." Thus, our decision here is distinguishable from our previous ruling in Shupack.