624 So.2d 761 (1993)
James J. WEAVER, Appellant,
v.
SCHOOL BOARD OF LEON COUNTY, Appellee.
No. 91-2920.
District Court of Appeal of Florida, First District.
September 14, 1993.
Rehearing Denied October 22, 1993.
Jerry G. Traynham, Patterson and Traynham, Tallahassee, for appellant.
*762 C. Graham Carothers and Kevin J. Carroll, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee.
SMITH, Judge.
Appellant, James J. Weaver (hereinafter Dr. Weaver or Weaver) appeals a final order of the Florida Commission on Human Relations (FCHR or Commission). The School Board of Leon County (Board) cross-appeals. Finding no reversible error, we affirm both as to the appeal and the cross-appeal.
This is the second appearance of this case before this court. In School Board of Leon County v. Weaver, 556 So.2d 443 (Fla. 1st DCA 1990), we affirmed in all respects, except one, the FCHR's administrative order which found that the Board had committed an unlawful employment practice in violation of sections 760.01-.10, Florida Statutes (1985), the "Human Rights Act of 1977," by failing to hire Dr. Weaver for a full-time position, and which ordered the Board to offer to Weaver the next available full-time position for which he was qualified.[1] We declined, however, to approve that portion of FCHR's order awarding back pay, because Dr. Weaver presented no evidence below with respect to his economic damages caused by the Board's discriminatory actions. We therefore affirmed in part and reversed in part, and remanded with directions to the Board to reinstate the hearing officer's recommended order, which did not award back pay. 556 So.2d at 444.
On remand to the FCHR, Dr. Weaver sought, unsuccessfully, to have the Commission to reopen the proceedings and to allow him to present evidence of his economic damages. The Commission declined. Instead, the Commission confined its further action to a hearing, pursuant to a reservation of jurisdiction contained in its final order, to establish the amount of costs and attorney's fees to be awarded to Weaver and his counsel.
On appeal, Weaver contends that the Commission's refusal to consider his economic damage claims on remand resulted from the Commission's misinterpretation of this court's opinion in the prior appeal. He also maintains that the Commission's award of attorney's fees was in error because the Commission applied a contingency risk multiplier of one and one-half, rather than two, and because the award failed to include compensation for delay in the receipt of attorney's fees for the services rendered by Weaver's counsel in this prolonged litigation. For reasons briefly explained below, we reject these contentions.
As for the cross-appeal, the Board maintains, first, that the FCHR erred in applying a multiplier to enhance Weaver's attorney's fee because Weaver's agreement with his principal attorney, Mr. Doltie, was contingent, but not in writing, and was thus unenforceable under Rule 4-1.5(f)(1), (2), Rules Regulating the Florida Bar. As authority for the latter point appellant relies upon the decision of the federal district court in FIGA v. R.V.M.P. Corp., 681 F. Supp. 806 (S.D.Fla. 1988). In a second point on cross-appeal, the Board also contends that the addition of a multiplier to the attorney's lodestar fee was error because enhancement by the use of a multiplier is not permitted in public policy cases. We disagree also with the Board's contentions on cross-appeal.
Addressing first the issues on cross-appeal, we note that the Board in its brief acknowledges that this court, in Ganson v. State, Department of Administration, 554 So.2d 522 (Fla. 1st DCA 1989) (Ganson I), reversed on other grounds, Department of Administration v. Ganson, 566 So.2d 791 (Fla. 1990) (Ganson II), ruled contrary to the decision in FIGA, supra. In Ganson I, this court approved and adopted as its own a hearing officer's ruling rejecting the application of the FIGA decision in a case, similar to the one before us, in which the attorney's agreement with his client called for the attorney to seek recovery of fees from the opposing party. More recently, the Third District in Harvard Farms, Inc. v. National Casualty Company, 617 So.2d 400 (Fla. 3d DCA 1993), *763 has disapproved the premise upon which the FIGA court relied. In FIGA, the court held that because an oral contingency fee agreement was in violation of the rules regulating the Florida Bar, an oral contingency fee agreement was invalid and unenforceable. The Harvard court declined to follow FIGA because the Bar rules provide that a violation of the rules should not give rise to a cause of action nor should a violation create a presumption that a legal duty has been breached. We agree with the Harvard court's resolution of this issue, and therefore reject the Board's contention here that Weaver's counsel's oral contingency fee agreement is unenforceable.
The second point on cross-appeal is more troublesome. Nevertheless, we are inclined to the view that the Commission's award of attorney's fees based on a multiplier of one and one-half of the lodestar fee was within the Commission's discretion. We acknowledge some difficulty in finding a clear direction from the decided cases with respect to the use of a contingency fee multiplier in public interest cases. Perhaps the most concise and definite explication of the guiding principles, so far as is pertinent here, is found in Mr. Justice Overton's specially concurring opinion in Lane v. Head, 566 So.2d 508, 513 (Fla. 1990), in which he wrote:
In establishing the three categories of attorney's fees in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), we rejected the general use of a contingency multiplier in categories I and III, yet approved a contingency multiplier for the prevailing party in category II, which deals with contract and tort cases. We declined to permit the multiplier's use in category I, which concerns public interest cases, except in the limited circumstances allowed under the principles enunciated by the United States Supreme Court in Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). I note that the use of a multiplier in this category is severely restricted and that "`no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party "would have faced substantial difficulties in finding counsel in the local or other relevant market."'" Quanstrom, 555 So.2d at 832 (quoting Delaware Valley, 483 U.S. at 733, 107 S.Ct. at 3090 (citation omitted)).[2]
In accordance with the views expressed by Justice Overton, who authored Quanstrom for the court, we conclude initially that to the extent the present litigation falls into the "public interest" category, the testimony of Dr. Weaver, his attorney and his expert witnesses satisfactorily met the criteria required for enhancement by demonstrating that without an adjustment for risk he would have faced substantial difficulties in finding counsel in the local or other relevant market.
Without question, a legal proceeding aimed at vindication of rights under the Florida Human Rights Act of 1977 falls neatly into the "public interest" category, that is, Category I. At the same time, the relief sought in a given case may be such that vindication of both public and private wrongs is involved. See e.g., D & A Excavating Service, Inc. v. J.I. Case Company, 555 So.2d 1256, 1258 (Fla. 4th DCA 1989) (on rehearing) (action brought under misleading advertising statute, sections 817.40 and 817.41, Florida Statutes (1987) contemplates both public and private vindication); Meli Investment Corp. v. O.R., 621 So.2d 676 (Fla. 3d DCA 1993) (case was public policy enforcement case to the extent tenants' counterclaim was based on AIDS discrimination statute, section 760.50, Florida Statutes (1991), but landlord's complaint raised breach of contract issues falling under Quanstrom's category II). We think the instant case may also be accurately described as a Category II case, in which a contingency risk multiplier may be employed.
*764 Here, as noted by the hearing officer below, Dr. Weaver initially sought broad relief, including recovery of economic damages. For reasons explained in our earlier opinion, this claim partially failed. Weaver, 556 So.2d at 445. However, the legal proceedings clearly resulted in personal and economic benefit to Dr. Weaver in that the Board was ordered to hire him in a full-time teaching position. We think this qualifies as vindication of a private wrong. This is especially so in view of the record which reflects that Dr. Weaver already had a significant employment history with the Board,[3] but because of the discriminatory actions of the Board was being denied a full-time position. It is true that Weaver had no contractual right to a full-time position with the Board. Cf. Greseth v. Department of Health & Rehabilitative Services, 604 So.2d 530 (Fla. 4th DCA 1992) (career service appeal under Chapter 447, Florida Statutes (1991) is an employment contract claim, and a contingent fee multiplier within Quanstrom category II was not inappropriate). Nevertheless, based upon his qualifications and experience, including his past employment by the Board itself, Dr. Weaver had a reasonable expectation of employment different from the ordinary member of the public who might initiate a challenge to the hiring policies and practices of the Leon County School Board. To this extent, at least, Dr. Weaver's legal action more closely resembles an attempt at vindication of wrongs of a personal and private nature. As illustrated by the issue addressed by the court in Lane v. Head, supra, not all cases will fall precisely into one or the other of the three Quanstrom categories. "Different types of cases require different criteria to achieve the legislative or court objective in authorizing the setting of a reasonable attorney's fee." Quanstrom, 555 So.2d at 828. Accordingly, we find that the Commission did not depart from the discretion vested in it by statute, section 760.01, Florida Statutes (1985), to award "reasonable attorney's fees," by applying a contingency multiplier of one and one-half to the lodestar fee.
Turning now to the issues raised by appellant, we conclude that the Commission did not depart from the decision and mandate of this court on remand following the prior appeal. In our Weaver opinion, we clearly pointed out that Dr. Weaver presented no evidence at the section 120.57(1) hearing relating to his economic damages, and that the Commission's action in reopening that hearing and ordering the payment of economic damages was without authority. 556 So.2d at 445. We concluded our opinion with directions to the Commission to reinstate the hearing officer's order, which, as previously noted, denied recovery of any economic damages because of the absence of proof. The denial of recovery of back wages and other monetary entitlements was therefore final, and governed by the "law of the case" doctrine, so that, as the Commission itself determined on remand, these economic issues could not be revisited. See, Thornber v. City of Fort Walton Beach, 622 So.2d 570 (Fla. 1st DCA 1993).
Appellant's second point on appeal is likewise without merit. The Commission had before it the hearing officer's recommended order in which he found that a contingency multiplier, if it could be applied, should be one and one-half of the lodestar fee. The Commission disagreed with the hearing officer's conclusion that because the contingency fee agreement was oral, it could not be recognized as valid. The Commission did agree, however, with the hearing officer's recommendation that, if applicable, a multiplier of one and one-half of the lodestar was appropriate. In view of the non-mandatory nature of the multiplier, and the discretion vested in the Commission with respect to its use, appellant's argument that a multiplier of two should have been used is not well taken. See, Ganson II, supra (use of contingency risk multiplier not automatically required where attorney has entered into contingent fee agreement).
*765 Finally, with respect to appellant's third point on appeal, we agree with the Commission's observation that while the court in Pennsylvania v. Delaware Valley Citizens' Council for Clear Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), recognized the need for consideration of compensation for delay in receipt of contingency fee awards, the court nevertheless failed to specify any particular delay factor to be taken into account in awarding contingent fees. In the case before us the Commission, finding that the hearing officer's determination of reasonable hourly rates and reasonable hours expended in the litigation was based on competent substantial evidence, adopted the hearing officer's calculations.[4] On the record before us we are unable to conclude that an abuse of discretion has been shown with respect to the Commission's failure to compensate Weaver for any delay in receipt of attorney's fees.
For the foregoing reasons, the order on appeal is in all respects,
AFFIRMED.
ERVIN and BARFIELD, JJ., concur.
NOTES
[1] Dr. Weaver holds a bachelor's degree and a master's degree from a North Carolina institution, and a Ph.D. from Florida State University. He has been fully certified to teach social studies, and has taught in schools and colleges both in North Carolina and Florida, including schools under the jurisdiction of the Leon County School Board.
[2] It will be recalled that Quanstrom described three general categories of cases relevant to the application of a contingency fee multiplier: Category I  public policy enforcement cases; Category II  tort and contract cases; and Category III  family law, eminent domain, and estate and trust proceedings. 555 So.2d at 833-835.
[3] Dr. Weaver served as a substitute teacher in the Leon County School System from 1979 until 1985. He held a temporary position with the board from November 1984 until March 1985. With a master's degree in social studies he was qualified to teach social studies in Florida schools, and he had significant teaching experience.
[4] The evidence as to a reasonable hourly rate was conflicting. The hearing officer arrived at an hourly rate of $110 per hour for most of Mr. Doltie's work, and $150 per hour for the last 13 hours expended. No issue is presented on appeal as to fees awarded to other counsel involved in the proceedings below.